# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 19, 2010

## STATE OF TENNESSEE v. DUSTIN LEE OWENS

**Direct Appeal from the Circuit Court for Bedford County**
**No. 16703    Lee Russell, Judge**

**No. M2009-01157-CCA-R3-CD - Filed July 7, 2011**

Defendant, Dustin Lee Owens, was indicted for two counts of solicitation of a minor and one count of attempted aggravated statutory rape. Defendant entered an open guilty plea to all counts and was sentenced by the trial court to serve two years concurrently for Counts 1 and 2 and two years for Count 3, to be served consecutively to Counts 1 and 2, for a total effective sentence of four years as a Range I standard offender. In this appeal, Defendant challenges the trial court's order of consecutive sentencing, the length of the sentences, and the requirement that the sentences be served by incarceration. We find no error and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which DAVID H. WELLES and D. KELLY THOMAS, JR., JJ., joined.

Robert L. Marlow, Shelbyville, Tennessee, for the appellant, Dustin Lee Owens.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

*Facts*

On February 5, 2009, Defendant entered open guilty pleas to two counts of solicitation of a minor and one count of attempted aggravated statutory rape. At the guilty plea hearing, the State gave the following factual basis for the offenses:

[B]ack in May of last year, Detective Charles Merlo of the police department was conducting an undercover investigation of child sexual predators on the internet. He had created an online profile of a 13-year-old girl and would enter chat rooms. On one occasion, he was approached, or I guess, via the internet by the defendant and they began a conversation online which became sexually explicit in which the defendant proposed coming to Shelbyville and meeting what he thought to be the 13-year-old girl and then performing oral sex on one another.

They were actually – then that occurred on one day. Then the next day, there was another sexually explicit conversation with the same type of content, that the defendant would come to Shelbyville, meet the 13-year-old girl, and they would perform oral sex on one another.

And then ultimately what happened then on May 16th, so, we've got three days in a row, two days is online chats, and the third day on May 16th, the defendant actually came to a prearranged location with what he thought was this 13-year-old girl to meet with her to actually engage in some sort of sexual activity with her, but of course, was met by members of the Shelbyville Police Department and taken into custody.

At the conclusion of the guilty plea hearing, the trial court accepted Defendant's pleas.

*Sentencing hearing*

On April 2, 2009, the trial court conducted a sentencing hearing. Detective Charles Merlo testified that beginning in April of 2008, he began conducting investigations of sexual predators on the internet. He created a persona of a 13-year-old female and made a profile in an online chat room and then went to a regional Tennessee chat room and "waited for somebody to approach [him]." Detective Merlo testified that he has made seven arrests, which have resulted in five convictions, since he began these investigations. He testified that many more have engaged him in some type of online communication while he was logged in as a 13-year-old girl. Detective Merlo had not seen any decline in the number of contacts and believed that there is a need for deterrence in sentencing defendants convicted of these kinds of offenses.

Defendant testified and admitted that he chatted on the internet with someone he believed to have been a 13-year-old girl but later discovered was a police officer. He admitted that he went to Shelbyville with the intent to meet her and engage in sex with her. Defendant testified that he read the presentence report and the psychosexual evaluation report

-2-

and affirmed that the information contained therein was correct. Defendant acknowledged prior criminal charges of phone harassment and marijuana possession.

Defendant testified that he was married and that he lived with his mother and stepfather and his ex-girlfriend and their son. He obtained his GED certificate in May, 2001, and he was employed full-time at the time of the hearing. He also testified that he was behind in his child support obligation in two cases but that he was paying arrearages. He believed that his convictions would result in his "Honorable Discharge or possibly a Dishonorable Discharge" from the Tennessee National Guard.

Defendant testified that he and his wife had reconciled but she did not live with him at his mother and stepfather's home. Defendant helped to support their child by "pretty much giv[ing] her everything [he] ha[d] left over out of [his] check to support her while [he] was staying at home while [they] weren't living together." Defendant testified that he did not want to go to jail because of his wife and child who were "completely financially dependent on [him]."

Defendant disagreed with the conclusion in the psychosexual evaluation report that he "has not demonstrated responsibility and honor in his obligations until there are impending negative consequences." He thought the evaluator made that conclusion based on Defendant's failure to make a timely payment for his services. Defendant agreed with the evaluator's conclusion that he engaged in risky sexual behavior, but Defendant testified that he had changed.

Defendant testified that his actions that led to his convictions were "very stupid mistake[s]" and admitted that he had been "just totally irresponsible." Defendant testified that he had learned that the consequences of his actions affect not only him but also his family. He testified that some kind of therapy or treatment for his past behavior "absolutely couldn't hurt."

On cross-examination, Defendant testified that he believed that the online conversation between Detective Merlo and him was initiated by the detective, but he could not "say for sure." Defendant agreed that he had been the one to bring up the subject of sex.

Defendant testified that he had been arrested on May 6, 2008 for harassment against his former wife and that he posted bond on that charge. The online chats with Detective Merlo and his attempt to meet the person he believed was a 13-year-old girl happened on May 14-16, 2008. Defendant was convicted of the harassment charged and given a suspended sentence of 11 months and 29 days.

In 2004, Defendant was also convicted of two counts of simple possession of marijuana and given a suspended sentence, and he later violated the conditions of probation by having a positive drug screen and was sentenced to serve 30 days in confinement for his violation. Defendant admitted that he had used marijuana daily since the age of 13 until he joined the military in May of 2007. He testified that "it was shortly before then the marijuana use was stopped on a daily basis and then it was, maybe, four or five times after that." He claimed that he had not used marijuana at all since his arrest in May, 2008. Defendant denied the statement in the presentence report that he had used cocaine regularly from age 14 to 25. Defendant testified, "Those are not my words. I said occasional use."

Defendant's wife, Tianna Marie Owens, testified on his behalf. She learned of Defendant's actions at the time of his arrest. She testified, "I was angry. I cried. We fought about it a little bit, argued about it a little bit, and that's basically it." She and Defendant separated but had since reconciled. She and Defendant have a child together, and Defendant also has two children by two other mothers. She testified that "putting [Defendant] in jail isn't going to help, it's going to hurt everyone, him and everyone around him." She also testified that if someone were to approach her daughter for sex on the internet, she would want that person to go to jail.

Laura Prosser prepared the presentence report. She testified that Defendant indicated in his written answers to questions regarding his drug use that he had used marijuana daily from the age of 13 until August of 2008, which was contrary to his testimony that he stopped daily use in May of 2007, when he joined the military. For his response to a question asking why he had stopped using marijuana, Defendant wrote, "I'm already in too much trouble." Defendant also indicated that he had used cocaine once a month or once every two months from the age of 14 until 2006, but that he stopped using it because he didn't "want to chance addiction."

*Analysis*

Defendant argues that the trial court erred by not applying several mitigating factors and by imposing consecutive sentencing. He also asks this Court to order some type of alternative sentencing, but does not support this request with argument or citations to the record or to legal authority.

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range, or manner of service

of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999).

If the trial court has imposed a lawful sentence by following the statutory sentencing procedure, has given due consideration and proper weight to the factors and sentencing principles, and has made findings of fact adequately supported by the record, this court may not modify the sentence even if it would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, if the trial court does not comply with statutory sentencing provisions, our review of the sentence is *de novo* with no presumption the trial court's determinations were correct. *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008).

At the conclusion of the sentencing hearing, the trial court began by noting that Defendant was a Range I standard offender. The court then found two enhancement factors: 1) that Defendant has a previous history of criminal convictions; and 2) that Defendant had demonstrated a failure to comply with the conditions of probation. The trial court found that the only mitigating factor that might apply was that Defendant's conduct did not threaten or cause serious bodily harm, but the trial court did not give that factor "much weight at all." The trial court therefore enhanced Defendant's sentence from one to two years.

On appeal, Defendant asserts that the trial court should have considered as mitigating factors, Defendant's employment history, his child support payments and his support of his current wife and child, and "the effects of his felony convictions upon his service in the National Guard." First, we fail to see how Defendant's discharge from the National Guard due to his felony convictions act as a mitigating factor. As to Defendant's efforts to satisfy his support obligations, we also do not believe it is an applicable mitigating factor. Defendant has three children by three different women, and the evidence shows that his support of them was sporadic given that he was paying arrearages at the time of the hearing. Defendant also failed to show that his influence on his children was anything other than negative. We conclude that the trial court did not err by not using these factors to mitigate Defendant's sentence.

Defendant next asserts that the trial court erred by imposing partial consecutive sentencing and that the trial court failed to make the specific findings required under *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995). The trial court ordered Defendant's two convictions for solicitation of a minor to run concurrently with each other and his conviction for attempted aggravated statutory rape to run consecutively to the sentences for solicitation of a minor.

Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of following statutory criteria apply:

> (1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) [t]he defendant is an offender whose record of criminal activity is extensive;
>
> (3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6) [t]he defendant is sentenced for an offense committed while on probation; or
>
> (7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

Specific findings that an extended sentence is necessary to protect society and is reasonably related to the severity of the offenses are prerequisites to consecutive sentencing under the "dangerous offender" category in Tenn. Code Ann. § 40-35-115(b)(4). *State v.*

*Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). However, such specific factual findings are not required for the other categories of Tenn. Code Ann. § 40-35-115(b). *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999). Nevertheless, the general principles of sentencing require that the length of sentence be "justly deserved in relation to the seriousness of the offense" and "be no greater than that deserved for the offense committed." *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (citing Tenn. Code Ann. §§ 40-35-102(1) and -103(2)).

In this case, the trial court found that Defendant had an extensive record of criminal activity and that his testimony regarding his prior drug use was incredible, noting that "his own handwriting says one thing, and in his testimony today he attempts to suggest that Ms. Prosser has misquoted him." The trial court also believed that Defendant's testimony about who initiated the contact between him and Detective Merlo was "untruthful." The trial court also made several findings regarding the need for deterrence in this case, including that Detective Merlo had testified about the pervasiveness of this kind of criminal conduct and the conclusions in Defendant's psychosexual evaluation report that he had poor impulse control and was only motivated by negative consequences resulting from his behavior. The trial court specifically found that incarceration was necessary to avoid depreciating the seriousness of the offense.

We conclude the trial court did not err in ordering the length or manner of service of the sentences. The aggregate sentence was justly deserved in relation to the seriousness of the offenses and was not greater than that deserved. This issue is without merit.

In his brief, Defendant does not address the trial court's denial of alternative sentencing. Therefore, the issue is waived. Tenn. R. App. P. 27(a)(7).

## CONCLUSION

Finding no error on appeal, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE